IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| KEVIN BEAMON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 106-149 |
| ) | |
| CHARLES A. TOOLE, SR., ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Kevin Beamon, Jr., an inmate currently incarcerated at the Charles B. Webster Detention Center in Augusta, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis*. The matter is now before the Court on Defendant's "Motion to Dismiss or Alternative Motion for Summary Judgment." (Doc. no. 24). Plaintiff opposes the motion.[1] (Doc. no. 32). For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendant.

---

[1] The Clerk has given Plaintiff notice of Defendant's motion for summary judgment, apprised Plaintiff of his right to file affidavits or other materials in opposition, and informed Plaintiff of the consequences of failing to respond. (Doc. no. 28). Moreover, after noting that Plaintiff had not responded to Defendant's pending motion to dismiss or supplemental motion to dismiss, the Court entered an order instructing Plaintiff about the effect of failing to respond and giving him additional time to prepare a response. (Doc. no. 22). Plaintiff then filed a motion to extend the time to respond to Defendant's motion for summary judgment, which was granted. (Doc. no. 33). Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985)(*per curiam*), have been satisfied.

# I. PROCEDURAL BACKGROUND

Plaintiff commenced the above-captioned case, alleging that, while he was incarcerated at the Richmond County Jail ("RCJ") and the Charles B. Webster Detention Center ("CBWDC"), various individuals were deliberately indifferent to his serious medical needs. (Doc. no. 1, pp. 5-6).[2] On January 19, 2007, the Court screened Plaintiff's complaint, pursuant to 28 U.S.C. § 1915(e)(2)(B), recommending dismissal of all Defendants except Defendant Toole, dismissal of Plaintiff's Eighth Amendment claim based upon his staph infection, and dismissal of Plaintiff's claims for injunctive relief.[3] (Doc. no. 9). Thereafter, Defendant filed a "Motion to Dismiss or in the Alternative to Compel" and an "Amended & Supplemental Motion to Dismiss."[4] (Doc. nos. 17 & 19). Plaintiff responded and indicated his willingness to cooperate with the Court. (Doc. no. 29). Defendant subsequently filed the instant motion, arguing that this Court lacks jurisdiction because Plaintiff has failed to state

---

[2] Specifically, Plaintiff's claims were related to the treatment of his sexually transmitted diseases ("STDs") and the treatment of a staph infection. (Doc. no. 1, pp. 5-6).

[3] The Honorable Lisa Godbey Wood, United States District Judge, adopted the Court's January 19th Report and Recommendation. (Doc. no. 14).

[4] On June 14, 2007, Defendant served his "First Interrogatories and Request for Production of Documents to Plaintiff." (Doc. no. 17, Ex. A). After Plaintiff failed to respond, defense counsel sent Plaintiff a letter, on August 6, 2007, requesting responses to his discovery requests and informing Plaintiff that "if [he did] not receive full and complete responses within seven (7) days of the date of this letter, [he would] file the appropriate motion with the Court seeking an order compelling responses or in the alternative dismissal . . . ." (Id., Ex. B). In response, Plaintiff sent a letter stating, *inter alia*, that "[he] wont [sic] be filling out any documents or any other paperwork for that matter, until [he is] released from jail and consult with a lawyer" and that "[he] wont [sic] . . . even discuss[] [his] case any further until [he has] some legal representation . . . ." (Id., Ex. C, pp. 1-2). On August 14, 2007, "[i]n an effort to obtain the necessary discovery information from the Plaintiff by alternative means [Defendant] noticed the deposition of Mr. Beamon for August 22, 2007." (Doc. no. 19, p. 1). However, Plaintiff refused to participate and indicated that he wanted to consult an attorney prior to responding to any questions. (Doc. no. 21, pp. 4-5).

2

a claim upon which relief may be granted and that there are no disputed material issues, and thus, he is entitled to a judgment as a matter of law. (Doc. no. 24). Plaintiff maintains that, while he was incarcerated at the RCJ and CBWDC, Defendant Toole was deliberately indifferent to his serious medical needs.[5] (Doc. no. 32).

## II. STATEMENT OF FACTS

A. **Plaintiff's Version**

On June 26, 2006, Plaintiff was incarcerated at the RCJ. (Doc. no. 32, p. 1; doc. no. 1, p. 4). Plaintiff avers that, on June 27, 2006, he felt a stinging sensation and noticed some discharge from his penis, so he filled out "sick call" slips. (Doc. no. 32, p. 2; doc. no. 1, p. 5). On June 28, 2006, Plaintiff was examined by a nurse, who informed him that he might be able to see a physician sometime that week. (Doc. no. 32, p. 2). When no action was taken after a week, Plaintiff started complaining and filling out grievance forms, which were sent to Defendant Toole.[6] (Doc. no. 1, p. 5). Plaintiff submits that he was later told by an unnamed officer that he would go to the Richmond County Health Department ("RCHD") sometime that week. (Id.).

Thereafter, Plaintiff was transferred to the CBWDC, where he continued to fill out "sick call" slips. (Doc. no. 32, p. 2; doc. no. 1, p. 5). On July 10, 2006, Plaintiff avers that he was examined by a physician, who failed to check him for STDs or diagnose him with any

---

[5]The Court notes that Plaintiff advised the Court that Defendant Toole failed to address his Eighth Amendment claim, as it relates to the treatment of his staff infection. (Doc. no. 32, p. 3). As previously-noted, Judge Wood dismissed this claim. (Doc. no. 14).

[6]Plaintiff maintains that he began to write Defendant Toole because Officer McCraw stated, "401 dont [sic] take that situation seriously," and advised Plaintiff to "write straight to Charles A. Toole and Ronald Strength." (Doc. no. 32, p. 19).

3

condition, but did provide him with a shot.[7] (Doc. no. 32, pp. 2, 7 & 16). Plaintiff maintains that, after his July 10, 2006 examination and treatment, he continued to experience pain and suffering, until he was taken to the RCHD on July 19, 2006, where he was examined, diagnosed, and treated for gonorrhea. (Id. at 2, 8 & 13). During the July 19, 2006 examination at the RCHD, Plaintiff was also tested for chlamydia. (Id. at 2 & 8). After Plaintiff tested positive, he was taken back to the RCHD on August 16, 2006, where he received treatment for chlamydia. (Id. at 2, 9 & 11). Plaintiff submits that, although he wrote several grievances to Defendant Toole and continued to fill out "sick call" slips, he was not provided any pain medication. (Id. at 15). Plaintiff submits that Defendant Toole was deliberately indifferent to his serious medical needs because, while Plaintiff was incarcerated at the RCJ and the CBWDC, he received negligent and delayed medical treatment.[8]

### B.     Defendant Toole's Version

Defendant Toole avers that, on June 26, 2006, Plaintiff was incarcerated at the RCJ, and thereafter, complained of pain and discharge from his penis. (Doc. no. 26, ¶ 3). On June 28, 2006, Plaintiff was examined by a nurse at the RCJ and referred to the RCHD's STD Clinic. (Id. ¶ 4). In the meantime, Plaintiff was examined at the RCJ on July 10, 2006, by Dr. Pope, who provided Plaintiff with Rocephin and Doxycycline for his STDs. (Id. ¶ 5).

---

[7]In the complaint, Plaintiff alleged that he filled out "sick call slips" until he was examined. (Doc. no. 1, p. 5). During that examination, Plaintiff stated "I received a shot in my left buttock and *was told I had an STD*." (Id. (emphasis added)).

[8]Plaintiff complains, "He followed the procedure of the jail and still had to wait each time to be seen by the doctor." (Doc. no. 32, p. 17). Specifically, Plaintiff submits that "he had to wait 23 days with [gonorrhea] and 51 days with the [ch]lamydia." (Id.).

4

Plaintiff was then sent to the RCHD on July 19 and August 16, 2006, where he received additional treatment for his STDs. (Id. ¶ 6).

Defendant Toole provides a copy of a referral form, which indicates that, on June 28, 2006, Plaintiff was examined by a nurse at the RCJ, diagnosed with gonorrhea and chlamydia, provided with medication, and referred to the RCHD STD clinic. (Id., Ex. 2). Defendant Toole also submits the Correctional Medical Services, Inc.'s Physicians' Orders, which confirms that Plaintiff was examined and provided with Rocephin and Doxycycline for STDs on July 10, 2006. (Id., Ex. 3). Defendant Toole also provides Plaintiff's medical records from the Georgia Department of Human Resources, Division of Public Health, which verify that he was examined and treated for STDs on July 19, 2006. (Id., Ex. 4, pp. 2-3). Furthermore, Plaintiff's July 24, 2006 lab report confirms that, although Plaintiff tested negative for chlamydia, he still tested positive for gonorrhea. (Id., Ex. 4, p. 1). Moreover, Plaintiff's medical records show that, on August 16, 2006, Plaintiff was again examined and treated for gonorrhea. (Id., Ex. 4, pp. 3-4). Defendant Toole also submits two RCJ "Inmate Custody Transfer Slips," which further establish that Plaintiff received medical treatment at the RCHD on July 19 and August 16, 2006. (Id., Ex. 5).

Finally, Defendant Toole provides the Affidavit of Abraham Oyewo, M.D., in support of his motion for summary judgment. (Doc. no. 27). Dr. Oyewo submits that his affidavit is based on his personal knowledge and his review of Plaintiff's medical records. (Id. ¶ 3). Dr. Oyewo, who was previously employed by Correctional Medical Services, Inc., is licensed by the State of Georgia. (Doc. no. 27, p. 1, ¶¶ 1 & 2). According to Dr. Oyewo,

> Plaintiff claims that there was approximately a two-week delay in responding to Plaintiff's complaints . . . . In my opinion, such a two-week delay was not serious. Indeed, such a delay is common in the free world

5

between private doctors and patients, and does not amount to conscious indifference to a serious medical need, nor is it medical malpractice to allow such a delay under the circumstances.

. . .

In my opinion, [Plaintiff's] treatment, diagnosis, and referral were timely, proper and appropriate.

(Id. ¶¶ 5 & 6).

### III. DISCUSSION

A.  **Summary Judgment Standard**

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[9] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element

---

[9]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

6

of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Id. at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## B. Merits of Plaintiff's Claims

Bearing the above standard in mind, Defendant Toole should be entitled to summary judgment. To survive Defendant Toole's motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could conclude: (1) that Plaintiff had an objectively serious medical need, and (2) that Defendant Toole acted with deliberate

indifference to that need. Farrow v. West, 320 F.3d 1235, 1243 (11th Cir. 2003). Although Defendant Toole concedes that Plaintiff's STDs constituted a serious medical need (doc. no. 25, p. 4), Plaintiff has not shown that Defendant Toole acted with deliberate indifference to those needs.

To show that Defendant Toole was deliberately indifferent to his needs, Plaintiff must offer some proof that Defendant Toole: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant Toole disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Id. In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002)); see also Farrow, 320 F.3d at 1244 n.12 ("In Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L.Ed.2d 666 (2002), the Supreme Court criticized part of the qualified immunity analysis in Hill, but not Hill's analysis of what constitutes a serious medical need of prisoners.").

However, it should be recognized that the mere fact that a prisoner "may have desired [a] different mode[] of treatment" does not give rise to a claim for deliberate indifference. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985). "Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments." Id. (citation omitted).

Put another way, a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment will not support a claim of cruel and unusual punishment. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

Furthermore, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." West, 320 F.3d at 1243 (internal quotation and citation omitted). The Eighth Amendment does not mandate that the medical care provided to the prisoner "be perfect, the best obtainable, or even very good." Harris, 941 F.2d at 1510 (quoting Brown v. Beck, 481 F. Supp. 723, 726 (S.D. Ga. 1980) (Bowen, J.)). As the Supreme Court has explained:

> [A]n inadvertent failure to provide medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Thus, mere allegations of negligence or malpractice do not amount to deliberate indifference. Campbell v. Sikes, 169 F.3d 1353, 1363-72 (11th Cir. 1999) (explaining that medical malpractice cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505.

### 1. Alleged Failure to Diagnose or Properly Treat Plaintiff's STDs

Plaintiff argues that Defendant Toole was deliberately indifferent to his serious medical needs because, while he was incarcerated at the CBWDC, Dr. Pope provided him

9

with a shot in his left buttock without checking him for STDs or diagnosing him with any condition.[10] (Doc. no. 32, p. 5). Although Plaintiff concedes that Dr. Pope treated his condition during the July 10th examination, Plaintiff complains that he experienced pain and suffering until he was treated at the RCHD because Dr. Pope's treatment did not cure his STDs. Conversely, Defendant Toole maintains that "Plaintiff cannot show that Defendant's care for the Plaintiff was so incompetent as to result in the denial of the minimal civilized measure of life's necessities" because Plaintiff was examined twice by his medical staff and received special treatment at the RCHD. (Doc. no. 25, p. 7).

Indeed, the record establishes that, while Plaintiff was incarcerated at the RCJ and the CBWDC, not only was he treated, but he was also properly diagnosed and provided with appropriate medication for his STDs. On June 28, 2006, Plaintiff was tested for STDs by a nurse at the RCJ. (See doc. no. 26, Ex. 2; doc. no. 32, p. 2). Dr. Pope, exercising his medical judgment, examined Plaintiff and provided him with antibiotics for gonorrhea and chlamydia on July 10, 2006. (Doc. no. 26, Ex. 3). Even assuming that Dr. Pope's course of treatment was somehow deficient or differed from the treatment plan other caregivers would have pursued, or that Plaintiff would have preferred, these assertions alone are insufficient to generate a dispute of material fact regarding whether Defendant Toole was deliberately indifferent to Plaintiff's serious medical needs. Differences in opinion concerning treatment fall well short of establishing deliberate indifference. See Harris, 941 F.2d at 1505; Waldrop, 871 F.2d at 1033. In fact, allegations of negligence or malpractice do not amount to deliberate indifference. Campbell, 169 F.3d at 1363-72 (explaining that medical malpractice

---

[10]Despite Plaintiff's use of the term "negligence" when describing this claim (doc. no. 32, p. 5), it appears that he is actually asserting a deliberate indifference claim.

cannot form the basis for Eighth Amendment liability); Harris, 941 F.2d at 1505. Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to any material fact related to Plaintiff's deliberate indifference claim based on the alleged failure to properly diagnose or treat his STDs.

### 2. Alleged Delayed Treatment

Plaintiff further argues that Defendant Toole was deliberately indifferent to his serious medical needs because "he had to wait 23 days with [gonorrhea] and 51 days with the [ch]lamydia" before he was examined by a physician. (Doc. no. 32, p. 17). Plaintiff complains that, during the weeks following his incarceration, he filled out "sick call" slips and submitted several grievances to Defendant Toole concerning his medical needs before his STDs were cured. As such, Plaintiff concludes that this delayed treatment subjected him to unnecessary pain and suffering, and could have lead to a worse condition. (Doc. no. 32, p. 1). Conversely, Defendant Toole maintains that "Plaintiff does not allege sufficient facts to conclude that Defendant Toole ignored his needs or refused service sufficiently to constitute a Constitutional violation." (Doc. no. 25, p. 6).

Despite Plaintiff's contentions, the record demonstrates that, in the weeks following his incarceration, Plaintiff received near-constant medical attention for his STDs from several healthcare professionals. Plaintiff first complained, on June 27, 2006, of pain and discharge from his penis. (Doc. no. 26, Ex. 1). On June 28, 2006, Plaintiff was examined by a nurse at the RCJ, diagnosed with gonorrhea and chlamydia, provided with medication, and referred to the RCHD STD clinic. (See id., Ex. 2; doc. no. 32, p. 2). Plaintiff was again examined on July 10, 2006 at the CBWDC by Dr. Pope, who again provided Plaintiff with

11

medication for his STDs. (Doc. no. 26, Ex. 3). Plaintiff was then transferred to the RCHD on July 19 and August 16, 2006, where he received additional treatment for his STDs. (Id., Exs. 4 & 5). Furthermore, based upon his personal knowledge and examination of the record, Dr. Oyewo concluded that Plaintiff's treatment was timely and that a two-week delay was not serious. (Doc. no. 27, pp. 5-6). Ultimately, although Plaintiff complains that he waited an unnecessary amount of time before his STDs were cured, he has not provided the Court with verifying medical evidence establishing any detrimental effect caused by the alleged delay in treatment. On this point, Defendant has provided Dr. Oyewo's affidavit, which indicates that Plaintiff's treatment was timely and adequate. Therefore, viewing the evidence in the light most favorable to Plaintiff, the Court finds that there is no genuine issue as to any material fact related to Plaintiff's deliberate indifference claim based on the alleged failure to timely treat Plaintiff's STDs.

In sum, Plaintiff has merely described his dissatisfaction with the medical treatment that he received while incarcerated at the RCJ and the CBWDC. Even assuming for the sake of argument that the treatment Plaintiff received while incarcerated at the RCJ and the CBWDC was somehow deficient, that assertion alone is insufficient to generate a dispute of material fact regarding the alleged deliberate indifference to his medical needs. Notably, Plaintiff has not provided the Court with verifying medical evidence to support his conclusions that Defendant Toole was deliberately indifferent to his serious medical needs or that he suffered any detrimental effects as a result of the medical treatment he received while incarcerated at the RCJ or the CBWDC. Rather, the record demonstrates that, while incarcerated at the RCJ and the CBWDC, Plaintiff received appropriate and timely treatment for his STDs. Therefore, viewing the evidence in the light most favorable to Plaintiff, the

Court finds that there is no genuine issue as to any material fact related to Plaintiff's deliberate indifference claims.[11] Accordingly, Defendant Toole is entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion for summary judgment (doc. no. 24) be **GRANTED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of Defendant Toole.[12]

SO REPORTED and RECOMMENDED this 24th day of January, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[11] As the Court has determined that Plaintiff's deliberate indifference claims lack merit and Defendant Toole has not raised the issue in the instant motion, the Court need not explicitly address Plaintiff's apparent attempt to hold Defendant Toole liable under a theory of *respondeat superior*, which is not a viable theory of recovery under 42 U.S.C. § 1983. See Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) ("[S]upervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." (internal quotation marks and citation omitted)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). However, the Court notes, as it relates to the facts of the above-captioned case, that "[s]upervisory officials must rely on their subordinate professionals to make competent medical decisions. As long as supervisory officials have no reason to believe that their subordinates are failing to carry out their duties in a competent manner, they should not be held liable for medical decisions over which they have no direct control." Waldrop, 681 F.Supp. at 851. In this case, nothing in the record indicates that Defendant Toole either interfered with Plaintiff's medical treatment or failed to follow medical opinions concerning Plaintiff's treatment.

[12] As the Court has recommended that Defendant's motion for summary judgment be granted, the Court also **REPORTS** and **RECOMMENDS** that Defendant's "Motion to Dismiss or in the Alternative to Compel" and "Amended & Supplemental Motion to Dismiss" be **DENIED** as **MOOT**. (Doc. nos. 17 & 19).

13